## No. 12,215.

### H. KERN & SON VS. THEIR CREDITORS.

The vendees, while consummating the sale and affecting payment of the price' stipulated, as a condition, that they should be held harmless in case an attachment was sustained.

The agreement between the vendors and vendees covered all expenses incurred by the vendees in protecting their purchase, including attorney's fees.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*W. W. Howe* and *W. S. Benedict* for A. Shwartz & Sons, Plaintiffs in Rule, Appellees.

*Lazarus, Moore & Luce, Bernard Titche, Dinkelspiel & Hart* and *Percy Roberts*, for Syndic and Creditors, for Defendants in rule, Appellants.

Argued and submitted December 14, 1896.
Opinion handed down February 1, 1897.
Rehearing refused May 10, 1897.

The opinion of the court was delivered by

BREAUX, J.    In this proceeding Shwartz & Sons sought to subject a fund (realized from a sale to them by Kern & Son) to the payment of counsel fees and all charges incurred by them as intervenors, to protect their purchase.

The salient facts are that a respite was granted to Kern & Son in 1897.

Instead of paying the first instalment to their creditors, when it

became due, under the conditions of the respite, they made a surrender of their property.

Immediately before their surrender they sold their property, consisting of goods and merchandise, to A. Shwartz & Sons, for forty thousand dollars.

A short time after the agreement of sale had been made, Claflin & Co. secured a writ of attachment and levied upon the goods claimed to have been bought by Shwartz & Sons and sued out garnishment process upon these purchasers. These proceedings were instituted before the United States Circuit Court.

Shwartz & Sons, to protect their purchase, intervened. The controversy on all sides was quite energetic; many witnesses were examined and many law points argued, as made evident by the portly volume before us.

Finally, the Federal courts found, as a matter of fact and conclusion of law, that the attachment was dissolved by the insolvency and cession under the insolvent law of Louisiana.

In other words, it was found that in this State attachment gives rise to no lien prior to final judgment, and that after cession and acceptance all of the property of the insolvent debtor is vested in the creditors, and all suits brought anterior to the failure must be transferred to the court in which the insolvent debtor shall have presented his schedule, and shall be continued against his syndic.

The Federal court complied with the requirement of Sec. 975 of the United States Revised Statutes.

After the attachment had been dismissed before that court, and the State courts having cognizance of the case in insolvency, had become vested with jurisdiction, Shwartz & Sons secured a rule on the syndic to show cause why forty-one hundred and eighty dollars and twenty cents should not be paid to them.

They suggest, as grounds for their rule, that there appears on the schedule of the insolvents, Kern & Sons, the following entry, viz.: " The sum of eighteen thousand five hundred dollars is now in custody of certain custodians selected by my former attorney, Felix J. Dreyfous, and W. S. Benedict, the attorney of A. Shwartz & Sons, and which said sum of eighteen thousand five hundred dollars is held by them as trustees under an agreement made between petitioner and the said A. Shwartz & Sons, to await the result of a certain seizure and garnishment proceeding in the suit of H. B. Claflin Com-

pany, agent, in the United States Circuit Court and entitled the H. B. Claflin Company vs. H. Kern & Sons, being No. 1269 of the docket of said court.''

They also allege in their rule that the sum was held in trust by W. S. Benedict to protect them in their purchase.

That the amount of forty-five hundred dollars held by him as a reserve fund was held to abide the decree of the court. That they were obliged to expend and that they became liable for the sum of forty-one hundred and eighty dollars and twenty cents, to hold themselves harmless in their purchase of the stock of goods from Kern & Son as against the H. B. Claflin Company, attaching creditors.

'' That the expenses consisted in attorney's fees paid to Howe & Prentiss, fifteen hundred dollars, and to Rouse & Grant, six hundred dollars, and due W. S. Benedict, one thousand dollars, and of actual costs of court paid in defending the purchase, the sum of one thousand and eighty dollars and twenty cents, viz.: to the clerk, marshal and stenographer, and printing briefs.

'' That it was so agreed and understood verbally between H. Kern & Son and your movers that said purchase of said stock of goods being valid and advantageous to said H. Kern & Son, said Kern & Son would place sufficient funds in trust to protect your movers and hold them harmless against all losses or expenses by the litigation arising from the attachment and garnishment of the said H. B. Claflin.''

The syndic pleads the general denial, and specially avers that the amount was withheld for the exclusive benefit and advantage of Shwartz & Sons, and solely in order to protect them against what they thought might result in a double liability, and that all of the court costs, attorney's fees and other charges were incurred by Shwartz & Sons for their sole and exclusive benefit, and in no wise enured to the benefit of Kern & Son or to their creditors.

The judgment of the District Court made the rule absolute.

One of the creditors of Kern & Son, and the syndic of the insolvency, prosecutes this appeal.

There is no dispute in regard to the value of the services. The record shows that the attorney for the appellant admitted, as follows: '' No question is raised as against the amount of the charges, which are considered reasonable.''

In delivering the amount remaining of the purchase price the vendees stipulated that the syndic " shall hold the sum of forty-five hundred dollars, or allow the sum to remain in deposit in the judicial depository of the Civil District Court."

The syndic on his part, in consideration of the stipulations and by authority of the court, placed the amount in deposit in the judicial depository.

In support of the equity of their claim plaintiffs urged that but for their action the fund would have been taken by the Claflin Company, and that the syndic and creditors would not have received anything.

They moreover asserted, with reference to the particulars of their action, that they carried on an expensive litigation in the United States courts, in which the testimony of a large number of witnesses was taken in support of their motion to dissolve the attachment and defend their purchase; that the judgment of the United States Circuit Court was not satisfactory. They took a writ of error, and specially assigned as error the question of the attachment; that the burden of setting aside the attachment rested upon Shwartz & Sons; that they incurred and paid stenographers, counsel fees and other expenses, and thus saved the fund for the creditors of Kern & Son, which was held as security—first, to protect them against their expenses; and, in the second place, to go to the syndic for the creditors. The defendants in rule in their defence upon this question, controverting the argument of plaintiff, urge that no act of Shwartz & Sons prevented Claflin from realizing upon his judgment; that it was Kern's act; that it was his voluntary insolvency and the procurement by him upon his schedules, under oath, of the stay order of the District Court of the State, which the Federal Court held operated a dissolution of the Claflin writ.

That Shwartz & Co. could have relieved themselves of all responsibility in the litigation by depositing in the registry of the court the funds in their possession, or under their control; that in consequence there was no basis for the claim of Shwartz & Sons; that they continued with the litigation, in so far as they were concerned, to protect themselves from double liability and for the benefit of the creditors, and that it follows they should not recover their expenses.

With reference to the proposition that the services of the attorneys of Shwartz & Co., and the payment of costs enured to the benefit of the crediters of Kern & Son, we must say that, in our view, it is

not a firm basis for an action.   We are not led to infer from the facts of the case that the purpose of Shwartz & Sons, as intervenors in the case before the United States Circuit Court, was to save the funds for the creditors.   However valuable the services of counsel may have been to the syndic, they were not employed by him; it follows, then, that those by whom they were employed can not recover fees paid from parties who did not employ them.

The question remaining for decision relates to the special deposit and special agreement, established, it is alleged, by the testimony of witnesses, and so found by the lower court.

The issue now before us presents chiefly questions of fact.

The declaration of Kern & Son contained in their schedule, veri- fied by their oath, is positive and direct.   In the presence of such a statement filed of record, Kern & Son either as parties to an action, or as witnesses, can not, with the possibility of its having any weight, deny that F. J. Dreyfous was their former attorney, and that he and W. S. Benedict were the trustees under an agreement between them and A. Shwartz & Co.

Mr. Benedict, a reputable member of the bar, whose integrity is not questioned, testified:

" Relative to the fund it was agreed between Mr. Dreyfous and myself that in order to protect A. Shwartz & Sons against any law- suit, and to hold them harmless, and to indemnify them for any ex- penses they might have to undergo, that H. Kern & Son should protect the fund to that end, that it would be preserved for the benefit of the general mass of creditors of H. Kern & Son and that they would make a surrender in insolvency."   Continuing as a wit- ness, he said:

" I received on 2d May, 1892, this amount of twenty-seven thousand four hundred and fifteen dollars and fifty-six cents, to be held by me under trust that had been originally made as stated to protect A. Shwartz & Sons from danger of double liability in the premises, as expressed in the writing."   Again, as a witness: " The primary object of the agreement was to hold this fund in trust to indemnify A. Shwartz & Sons from any risk by reason of any liti- gation on the part of Claflin & Co."   We interpret the word *trust* as used, in the sense of agent deemed a trustee for this purpose mentioned.

It is evident in our judgment that there was an agreement entered

into between Kern and Shwartz at the time, in regard to this fund, with the view of protecting the purchasers, Shwartz & Sons. Whether it includes the claim of plaintiff in rule is the question for our determination.

At this point, relative to the scope of the agreement asserted by the plaintiff in rule, the defendants insist that the declaration in the schedule of Kern & Son, which we have copied, was without foundation in fact, and that the testimony of Mr. Benedict was a mistake.

This petition, as we read the record, is not sustained by the weight of the testimony.

In the first place the attorney of Kern & Son, at the date of their sale to Shwartz & Sons, testified that he felt that the purchasers should be protected (from double liability possible, if Claflin &. Co. succeeded in their suit), and that he effected an agreement to protect them; that he submitted the result of his action to his clients. They made no objection. The agreement was, he stated as a witness, that the sum of money should remain as a trust to secure A. Schwartz & Sons against the effect of the attachment, which was threatened by H. B. Claflin & Co.; to hold them harmless; to protect and indemnify them, as they were purchasers in good faith, and had paid their money. Nathan Shwartz, of the firm of Shwartz & Sons, testified that prior to the attachment Kern, of Kern & Son, promised them protection as purchasers and approved the action of his attorney, Dreyfous.

It is a fact that Kern, as a witness, flatly denied all to which these witnesses had testified. Confronted as he was by his own sworn declaration in his schedule, it could not be held that his testimony alone was of more weight than the testimony of at least three witnesses.

We have made a summary of the testimony bearing upon this point, as follows, viz.:

Nathan S. Shwartz testified that Kern assured him that his firm, as purchasers, "should be protected in every shape and form." He (Kern) raised no objection to placing money in trust, provided it met with the approval of his attorney, Dreyfous.

This is followed, as evidence, by the schedule of the insolvent, and lastly, in the action brought by the syndic against A. Shwartz & Sons for an accounting; it culminated in an agreement between the

parties under which eighteen thousand seven hundred and ninety-four dollars and forty-six cents was turned over to the syndic; the sum of forty-five hundred dollars thereof to be placed in the judicial depository of the court to abide the decree on the issue to be presented by A. Shwartz & Sons for the costs and charges sustained, and for which they were liable in the proceedings of the Claflin Company in the United States Court.

The attorney for Kern & Son testified that with one who was authorized to represent Shwartz & Sons he agreed to withdraw the checks of the purchaser for the price and place it (the price) in the hands of some responsible person to be held as security against any law case to which Shwartz & Sons might have to answer.

H. Newgass testified that "under an agreement all around he handed the amount realized on the check to Isidore Newman. He informed the latter that it had been left with him as the trustee of Shwartz and Kern. After a special request Newman consented to receive the amount in trust. He was informed at the time that he would be called upon for it by Benedict, who had been selected as trustee. In the meantime (Newman testified that) he held it as a favor to Shwartz and to Kern, and that each must have known during the time that he held it; that he had the amount in his possession.

It is true, as alleged by appellants, the fund was not always in the possession of the trustees. For some reason it, at times, was in other hands. There was a statement filed by one of the trustees, Benedict, in the United States Circuit Court, in which it was not clearly set forth, it is contended, that the fund was to be charged with the amount now claimed, as will be seen by the following copied from the statement, viz.: "to protect A. Shwartz & Sons from the danger of double liability in the premises." This statement, however, explained by the testimony, included the expenses incurred as being in the nature of a double liability, from which they, (Shwartz & Son) sought to protect themselves. They had bought the property at its value; any liability arising in addition to the price was to that extent an additional amount.

The facts are indisputable that immediately after Shwartz & Sons had become the owners of the goods by purchase, for ample consideration, suit was brought by a creditor of his vendor (Kern) in which a large amount was claimed, an attachment was levied and the goods attached, and garnishment process issued for the price. It is shown

that they were concerned, and called upon their attorney and said that they were anxious to annul the sale. Having been assured by him that they could be protected by the vendor from any loss, or any further liability of any kind, by placing the amount in deposit, an agreement was made to that end. It was complied with by all the parties. We think the fund paid by them was properly charged with the expense covered by the agreement.

We are next brought to the question (strongly argued by the counsel for appellant) of improper payment of a portion of the fund, owing, it is charged, to the control retained over it by Shwartz & Sons.

We have not found in our examination of the facts that Shwartz & Sons are responsible for the payment freely made, from this fund, while it was held in trust. The payments from the fund to several of the creditors of Kern & Son were made with their (Kern & Son) consent and upon their order. If any wrong was committed in paying from this fund, it was committed by Kern & Son.

Shwartz & Sons were in no way concerned in these payments. They had nothing to do with them. These payments should not operate to the prejudice of their right to recover under the agreement, even if there was some delay in paying the price or in providing for the payment of their check representing the price, owing to the fact that they were exposed to a double liability, in view of the pending attachment from which they desired to protect themselves.

An attentive consideration of the testimony has brought us to the conclusion that the fund was deposited as alleged for indemnity against possible loss.

The obligation was to save plaintiffs in rule harmless; this, we think, included fees and costs.

In Berry vs. Slocomb, 2 An. 993, the obligation by defendant was to save the plaintiff harmless, as in the case here; the court held that the defendant owed the plaintiff the fee paid by him to counsel by whom the case was defended.

We do not think, in view of the admission made of record, that we should pass upon the amount allowed for fees. There was no controversy as to the amount; the whole question was confined to the right *vel non* of Shwartz & Sons to recover the sum paid by them.

The judgment is affirmed.

MILLER, J., dissents.

ON APPLICATION FOR A REHEARING.

WATKINS, J. The object of this suit is to subject an asset in the hands of the syndic of the insolvents to reimbursement of certain attorneys' fees and other expenses which A. Shwartz & Sons incurred in a litigation with one of their creditors.

H. Kern & Son made sale of a stock of goods *in globo* to A. Shwartz & Sons for the cash price of forty-seven thousand dollars, and contemporaneously therewith H. B. Claflin & Co. sued out an attachment against H. Kern & Son for a large sum, in the United States Circuit Court, seized the stock of goods and issued garnishment process against A. Shwartz & Sons.

On account of these proceedings, A. Shwartz & Sons stopped the payment of the check which they had given to H. Kern & Son for the price of the goods, and at the same time they filed an intervention in the attachment suit claiming the ownership of the property.

During the pendency of the foregoing proceedings H. Kern & Son made a cession of their property under the insolvency laws of Louisiana, and included the proceeds of goods sold as one of their assets, and, as the result of the cession, the Federal tribunal held that the attachment was dissolved, thus freeing the fund from the garnishment and leaving the property in the possession of A. Shwartz & Sons.

The sale was thus consummated, and the price passed into the control of the syndic for the benefit of the creditors, and A. Shwartz & Sons proceeded by rule against the syndic for the fees and expenses which they had incurred in that litigation, resting their claims, mainly, upon a recital in the schedule of the insolvents, to the effect that said fund was in the possession and under the control of a certain trustee who had been selected by representatives of Kern & Son and Shwartz & Sons to await the result of the litigation, in pursuance of an agreement previously entered into between them for the purpose of protecting the sale.

In other words, that W. S. Benedict held the said fund as trustee for the purpose of protecting A. Shwartz & Sons in the expenses and expenditures they had incurred in their efforts to protect the stock of goods they had bought of H. Kern & Son, from the attachment of H. B. Claflin & Co.; and that this agreement was a supplement to and an incident of the sale.

This claim is resisted by the syndic and one of the creditors of H. Kern & Son, who are appellants.

In support of their contention, A. Shwartz & Sons claim that they conducted an expensive litigation with H. B. Claflin & Co., and prosecuted a writ of error from an adverse judgment of the Circuit Court to the United States Court of Appeals, and therein procured the dissolution of the writ of attachment at great cost and expense.

On the other hand, the contention of the syndic is, that it was the cession of H. Kern & Son which struck down the attachment, and released the fund; and that A. Shwartz & Sons could, at any time, have exonerated themselves from all liability by surrendering the fund, or causing it to be deposited in the judicial depository of the court.

Our opinion holds that the services of the attorneys of A. Shwartz & Sons and the expenses they incurred having inured to the benefit of H. Kern & Son is not a good basis for an action.

But the action taken by A. Shwartz & Sons evidently prevented H. B. Claflin & Co. getting the fund in possession and depriving the syndic of it. The attachment was sustained in the Circuit Court; and nothing but the timely writ of error which was taken by A. Shwartz & Sons prevented its becoming a finality.

The agreement is stated to have been that the trustee was selected for the purpose of keeping the fund ·'' in order to protect A. Shwartz & Sons against any lawsuit and to hold them harmless, and to indemnify them for any expenses they might have to undergo '' * * * to the end, that the fund should be preserved for the benefit of the '' general mass of the creditors of H. Kern & Son.''

Our opinion, finding this proposition supported by the evidence, affirmed the judgment.

The application for a rehearing rests upon the following grounds, to-wit:

1. That the expenses incurred by A. Shwartz & Sons were the result of an understanding between them and Kern & Son, ''to divert the proceeds '' from the creditors of H. Kern & Son.

2. That the court erred in holding that the syndic and the creditors of H. Kern & Son were concluded and estopped by the schedule.

3. That if the statement made by W. S. Benedict, with regard to the agreement, is to be accepted, same must be taken in its entirety, and a part of it is that H. Kern & Son were to go into insolvency;

and had that part of the agreement been carried out, the attachment would have been immediately dissolved.

4. That the court erred in holding that there was any trust or agreement whatever, for the purpose of reimbursing the expenses or the attorneys' fees of A. Shwartz & Sons.

5. That A. Shwartz & Sons could have, at any time, relieved themselves from liability by making a surrender of the fund.

There are several additional grounds of objection stated, but they are substantially embraced in the foregoing.

None of the grounds urged are at all serious. In our view a sufficient foundation for the agreement is the protection of the fund for the benefit of the syndic and the creditors of H. Kern & Son.

The cession of H. Kern & Son was made, but it was unavailing in so far as the insolvents were concerned. The attachment was levied immediately after the terms of the sale had been agreed upon, and before the check of A. Shwartz & Sons was presented at bank for payment. It was, of course, prior to the agreement. Consequently that part of the agreement, subsequently made in reference to the cession of H. Kern & Son, was of no possible efficacy; and the subsequent cession as made did not procure the release of the property. Hence the necessity of intervention and writ of error obtained by A. Shwartz & Sons, through which alone the release of the attachment was obtained.

The point made, as well as the agreement of counsel for the syndic and the creditor goes upon the theory that the cession of H. Kern & Son would of itself have solved the whole difficulty.

Counsel says that if Kern had surrendered immediately, there would have been no need of an agreement. And they ask: "In such case, how could it have ever been contemplated that there would be any litigation in the Federal court?"

This argument misplaces the situation altogether. The litigation began before the sale was consummated and Kern's cession, subsequently made, was unavailing without the aid of Shwartz & Sons. Without the agreement and Shwartz & Sons' assistance neither the syndic or the creditors would have realized anything out of the fund.

Rehearing refused.

MILLER, J., adheres to his dissent, and BLANCHARD, J., takes no part in this opinion, not having been a member of the court at the original hearing of the cause.